UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BAKER WELLNESS CENTER, INC.<br><br>Defendant. | CIVIL ACTION NO: |

**COMPLAINT AND JURY DEMAND**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission"), and files its Complaint and Jury Demand. The EEOC respectfully avers as follows:

**NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act, as amended ("ADAAA" or "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability, and to provide appropriate relief to Brenda J. Lanus ("Ms. Lanus"), who was adversely affected by such practices. This suit is also brought to effectuate appropriate injunctive relief to others who may have been adversely affected by Defendant's discriminatory practices, and to prevent further occurrence of such practices.

**JURISDICTION AND VENUE**

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADAAA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f) (1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.

The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Louisiana.

**PARTIES**

3.

The EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.

At all relevant times, Defendant, Baker Wellness Center, Inc. ("Defendant" or "Baker Wellness"), has continuously been a corporation organized under the laws of the State of Louisiana, doing business within the State of Louisiana, and has continuously had at least 15 employees.

5.

At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADAAA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

6.

At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.

At least since October of 2011, Defendant has engaged in conduct in Baker, Louisiana, which violates the ADA.

8.

More than thirty (30) days before the institution of this lawsuit, Ms. Lanus filed a charge of discrimination with the Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

9.

Ms. Lanus has at all times relevant been a "qualified individual" with a "disability" within the meaning of the ADA.

10.

Ms. Lanus has type II diabetes. Diabetes is a physical impairment that substantially limits Ms. Lanus's endocrine function. Defendant knew Ms. Lanus had diabetes and took prohibited employment actions against her because of her diabetes. During her employment with

Baker Wellness, Defendant came to perceive Ms. Lanus as having a physical impairment or impairments and took employment action, prohibited by the ADA, against her because of said impairment(s).

11.

On or about October 21, 2011, Defendant hired Ms. Lanus as a Direct Service Worker ("DSW"). On her job application, Defendant asked the following, before having extended a conditional offer of employment: "Do you have any physical condition which could (1) limit your ability to perform the job applied for, or (2) be aggravated by the job you applied for?" and "Are you taking medication that could limit your ability to perform the job applied for?" Ms. Lanus truthfully answered "no" to both questions, which constituted activity protected by the ADA. At the time of hire, Ms. Lanus did not disclose her diabetes to Defendant, keeping it private, as was her right, granted and/or protected by the ADA.

12.

Ms. Lanus worked for Defendant from October 21, 2011, to January 19, 2012, as a DSW. Her job duties included, *inter alia*, transporting Defendant's clients to and from activities using Defendant's transport van.

13.

In late December of 2011, Ms. Lanus experienced some temporary blurred vision, which lasted for a matter of minutes and did not interfere with her ability to drive safely. No incident resulted from the vision issue.

14.

Ms. Lanus told her supervisor, Betty Wood ("Wood"), Defendant's Program Director, about the blurred vision.

15.

Ms. Lanus also told Dr. Theresita Manalac ("Dr. Manalac"), Defendant's Facility Manager, about the blurred vision and that she had diabetes. Dr. Manalac immediately directed Ms. Lanus to speak to her physician about the blurred vision. There was no objective basis on which to conclude that the blurred vision materially affected Ms. Lanus's ability to perform her job properly and safely. The evidence shows that Defendant perceived the instance of blurred vision to be related to Ms. Lanus's diabetes.

16.

After Ms. Lanus told Dr. Manalac and Wood about the blurred vision, Defendant continued to assign Ms. Lanus the responsibility of driving clients and placed her on the schedule to do so. Ms. Lanus continued to perform her duties properly, and without incident, for several weeks after Defendant learned of the brief instance of blurred vision and of Ms. Lanus's diabetes.

17.

Dr. Manalac informed Ms. Lanus, at the time Ms. Lanus disclosed her diabetes and blurred vision, that if she were unable to drive due to vision problems, Defendant would allow her to work inside the center doing other tasks, such as cleaning, until her vision improved. However, Ms. Lanus had no vision problems and was able to see normally after the isolated blurred vision incident.

18.

On or about January 3, 2012, several weeks after the single instance of blurred vision, at Dr. Manalac's direction, Ms. Lanus met with Rebecca Treuil ("Dr. Treuil"), her treating doctor for diabetes. Dr. Treuil wrote a letter recommending that Ms. Lanus not drive at work secondary

to her decreased visual acuity until she was evaluated and released by her ophthalmologist. Dr. Treuil did not perform an eye exam on Ms. Lanus and did not make an independent medical assessment of whether her vision was substantially impaired.

19.

After Defendant received the letter from Dr. Treuil, on approximately January 4, 2012, it ceased to place Ms. Lanus on the work schedule, because of her ADA disability, without offering any reasonable accommodation. This caused Ms. Lanus harm, including but not limited to the loss of wages. Defendant did not engage in any dialogue concerning accommodation, despite having previously told Ms. Lanus that her duties could be temporarily shifted — for example, to cleaning — if necessary.

20.

At the insistence of Defendant, stemming from Dr. Manalac's order that Ms. Lanus receive medical clearance with respect to her vision, Ms. Lanus saw her ophthalmologist on January 18, 2012, who issued a written release that Ms. Lanus could return to work. The release did not list or recommend any work restrictions.

21.

On January 19, 2012, Ms. Lanus hand-delivered the release document, dated January 18, 2012, to Dr. Manalac, which stated that Ms. Lanus was able to return to work with no restrictions. Dr. Manalac did not question Ms. Lanus on whether she was able to drive safely or whether she was experiencing any vision problems. Nor did Dr. Manalac state that there was any objective basis to doubt that Ms. Lanus was able to perform her job safely, as the medical release indicated.

22.

On January 19, 2012, Dr. Manalac stated to Ms. Lanus that the release document was insufficient because it did not contain an "MD" designation behind the name of the ophthalmologist.

23.

On January 19, 2012, Wood called the ophthalmologist, who confirmed that the release document was authentic. All objective medical evidence at this time showed that Ms. Lanus was able to perform her job safely, without need of accommodation.

24.

On January 19, 2012, after Wood's phone conversation with the ophthalmologist, Dr. Manalac asked Ms. Lanus if she could work as a cook. Ms. Lanus replied that she had previously worked in the kitchen as a dishwasher, but never as a cook. Dr. Manalac then orally informed Ms. Lanus that her services were no longer needed and discharged her. Dr. Manalac also told Ms. Lanus that she should have disclosed her medical condition at the time of her job application and hire. At no time did Defendant offer Ms. Lanus a temporary re-assignment in lieu of discharge, or any other form of reasonable accommodation.

25.

On January 19, 2012, Wood signed a letter addressed "to whom it may concern" stating that she called the ophthalmologist's office to confirm the January 18, 2012, medical release. Wood also stated in this letter that allegedly because of the concern and safety of the elderly passengers, Defendant asked Ms. Lanus not to drive.

26.

Wood signed another letter, dated January 20, 2012, addressed "to whom it may concern," which stated that "Ms [*sic*] Brenda Lanus in [*sic*] no longer with this facility due to her medical problems which were not disclosed at the time of her hire." Thus, Defendant stated in writing that it fired Ms. Lanus due to physical impairment(s). The letter also stated, falsely, that Defendant "offered her a position in the kitchen, but she refused." Defendant's letter made clear that the company claimed to be firing Ms. Lanus, at least in part, because of the manner in which she had responded to Defendant's pre-offer job application.

27.

The practices complained of herein have deprived Ms. Lanus of equal employment opportunities by virtue of Defendant's terminating her employment on the basis of disability.

28.

Through the practices complained of herein, Defendant conducted unlawful medical inquiries and/or examinations, in violation of ADA, 42 U.S.C. § 12112.

29.

Defendant violated the ADA, 42 U.S.C. § 12203, by retaliating against Ms. Lanus for activity protected by the statute.

30.

Defendant unlawfully failed to engage in an interactive process, with respect to whether Ms. Lanus needed and could have been given a reasonable accommodation, in lieu of being removed from her schedule, deprived of income, and terminated because of her disability, in violation of ADA, 42 U.S.C. § 12112.

31.

The unlawful employment practices complained of herein were, and continue to be, committed with malice or reckless indifference to Ms. Lanus's federally protected rights.

32.

The unlawful employment practices complained of herein were intentional.

33.

The unlawful employment practices complained of herein have caused Ms. Lanus to suffer economic injuries, including but not limited to lost wages, as well as nonpecuniary injuries.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from refusing to accommodate, and from illegally terminating, individuals who have a disability within the meaning of the ADAAA, and from any other employment practice which discriminates on the basis of disability, including but not limited to illegal medical inquiries in pre-offer job applications, using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, or requiring employees to undergo unlawful medical examinations;

B.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment

C.  Order Defendant to make Ms. Lanus whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to training of personnel and reporting to the Commission concerning compliance with the ADA;

C.  Order Defendant to make Ms. Lanus whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D.  Order Defendant to make Ms. Lanus whole by ordering reinstatement or, alternatively, by providing her with front pay, in amounts to be determined at trial, to eradicate the effects of Defendant's unlawful employment practices;

E.  Order Defendant to make Ms. Lanus whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional and mental anguish, pain and suffering, humiliation, loss of enjoyment of life, and devastation in amounts to be determined at trial, and by providing compensation for past and future pecuniary losses resulting from Defendant's unlawful practices;

F.  Order Defendant to pay Ms. Lanus punitive damages for its malicious and reckless conduct, as described hereinabove, in amounts to be determined at trial;

G.  Grant such further legal or equitable relief as the Court deems necessary and proper in the public interest; and

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, the Commission hereby requests a jury on all issues raised in the instant Complaint which may be tried by jury.

Respectfully submitted,

**P. DAVID LOPEZ**
General Counsel
No Bar Roll Number Assigned
**JAMES L. LEE**
Deputy General Counsel
No Bar Roll Number Assigned
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
No Bar Roll Number Assigned
**JIM SACHER**
Regional Attorney
La. Bar Roll Number 14888
Equal Employment Opportunity Commission
Houston District Office
1201 Louisiana Street, 6th Floor
Houston, Texas, 77002
Direct Line: (713) 651-4963
james.sacher@eeoc.gov

**GREGORY T. JUGE**
Supervisory Trial Attorney (Acting)
La. Bar Roll No. 20890
(504) 676-8239
gregory.juge@eeoc.gov

*/s/ Alexandra Navarre-Davis*
**ALEXANDRA NAVARRE-DAVIS**
Trial Attorney
La. Bar Roll No. 35000
**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New Orleans Field Office
1555 Poydras Street, Suite 1900
New Orleans, LA  70112
Direct line: (504) 595-2914

Fax: (504) 595-2886
alexandra.navarre-davis@eeoc.gov

**COUNSEL FOR PLAINTIFF,
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

**REGISTERED AGENT
FOR SERVICE OF PROCESS:**

**KENNETH P. DAIGREPONT
1651 THIBODEAUX AVE
STE C
BATON ROUGE, LA 70806**